UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:18-CV-81761-ROSENBERG/REINHART

CHIRON RECOVERY CENTER,
LLC, et al.,

    Plaintiffs,

v.

UNITED HEALTHCARE
SERVICES,INC. & UNITED
HEALTHCARE INSURANCE
COMPANY,

    Defendants.
_____/

**ORDER GRANTING IN PART
AND DENYING IN PART UNITED'S MOTION TO DISMISS**

This cause is before the Court on the Defendant United[1] Companies' Motion to Dismiss [DE 109]. The Motion has been fully briefed. For the reasons set forth below, the Motion is granted in part and denied in part.

    **I.**    **FACTUAL ALLEGATIONS & BACKGROUND**

This is a case about health insurance benefits. Plaintiff Chiron Recovery Center, LLC is a medical services provider. The Defendants in this case, United Healthcare Services, Inc. and United Healthcare Insurance Company are, as their names suggest, insurance companies. Ten individuals are co-Plaintiffs in this case (the "Individual Plaintiffs"). Those Individual Plaintiffs obtained medical treatment from Chiron. When the Individual Plaintiffs sought treatment from Chiron, Chiron called Defendant to verify that the Individual Plaintiffs had insurance coverage. The Defendant so verified, and Chiron provided treatment.

---

[1] For the sake of simplicity, the Court refers to the United Defendant companies as simply "Defendant" or "United."

At some point in time, a dispute arose between Chiron and Defendant. Defendant took the position that in the past it had overpaid Chiron for certain treatments pertaining to urine analysis, and Defendant essentially demanded that it be repaid. Chiron refused. Defendant then took the position that Chiron owed it a debt in the amount of the alleged overpayment. To collect upon this debt, when Defendant would otherwise transmit funds to Chiron for *current* patients, Defendant would also deduct a certain amount of funds from the amount it remitted to Chiron, and credit that amount towards Chiron's debt. The deductions were applied to patients that Chiron was treating in the present, even though the alleged overpayment had occurred in the past. The patients possibly affected by this deduction are the Individual Plaintiffs. Chiron filed this suit as a result of Defendant's practice in "offsetting" Chiron's alleged overpayment in the past with payments otherwise remitted in the present.

Early in this case, Chiron demanded that Defendant provide the governing insurance plan documents for the Individual Plaintiffs. Defendant refused. After Chiron received an adverse discovery ruling pertaining to Defendant's obligation to provide the plan documents, Chiron filed another case, case 19-CV-80766 ("*Chiron II*"). In *Chiron II*, Chiron sought to compel Defendant to produce the plan documents of the Individual Plaintiffs. After extensive motion practice, the Court dismissed *Chiron II* with prejudice.

Although it is not entirely clear to the Court how Chiron (or the Defendant) obtained the plan documents for the Individual Plaintiffs, at some point in time around the conclusion of *Chiron II*, Chiron did obtain those documents. Chiron then filed its Second Amended Complaint. Defendant responded with the Motion to Dismiss before the Court.

2

## II.   STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff; however, a plaintiff is still obligated to provide grounds of his or her entitlement to relief which requires more than labels, conclusions and a formulaic recitation of the elements of a cause of action.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-563 (2007). Unwarranted deductions of fact in a complaint cannot be admitted as true for the purposes of testing the sufficiency of the allegations.  *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).  The facts as pled must state a claim for relief that is plausible on the face of the pleading.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-69 (2009).

## III.   ANALYSIS

In both the instant case and *Chiron II*, Chiron has attempted to utilize a power of attorney to bring claims on behalf of the other Plaintiffs in this case, the Individual Plaintiffs.  This Court ruled previously that the power of attorney will only permit Chiron to bring a claim on behalf of an Individual Plaintiff if, by doing so, Chiron will benefit the Individual Plaintiff.  *E.g., Chiron II*, DE 30 at 14 ("An attorney-in-fact may not act for its own benefit; it must only act for the benefit of its principal." (citing *In re Estate of Bell*, 573 So. 2d 57, 59 (Fla. Dist. Ct. App. 1990)).[2]  Stated another way, Chiron may not use the power of attorney solely to benefit itself.

In prior rulings, this Court held that Chiron had not pled any injury (and therefore could not utilize the power of attorney) on behalf of the Individual Plaintiffs.  For example, in dismissing a prior Complaint in the instant case, *Chiron I*, the Court noted: "If, as the [Amended Complaint]

---

[2] The Court adopts and incorporates herein its legal analysis and prior rulings in *Chiron II*.

3

alleges, the . . . Plaintiffs had their claims paid in full, there is a significant question whether they suffered an injury-in-fact sufficient for Article III standing to seek relief for alleged harm arising from . . . insurance claims." DE 86 at 12-13. The Court addressed this issue in greater detail in *Chiron II*:

> As Judge Reinhart explained, Chiron can only maintain this action on behalf of an individual Plaintiff when the individual Plaintiff "is still owed payment or reimbursement." DE 30 at 15. Plaintiffs contend that the Amended Complaint now alleges a benefit to the individual Plaintiffs because some of the individuals owe a debt (or may owe a debt) to Chiron and, if Chiron can obtain a payment from Defendants that that will "reduce their debt." On this point, the case of *Williams v. Blue Cross & Blue Shield* is instructive. 2010 WL 4025857 (N.D. Fla. Oct. 12, 2010).
>
> In *Williams*, plaintiffs received diagnostic scans. *Id.* at *1-2. An insurer initially made full payments for the scans but later, after an audit, the insurer "recouped" payment for the scans, concluding that it had paid too much in its original payment (a scenario greatly resembling the instant case). *Id.* The plaintiffs in *Williams* sued the insurer for the amount of the "recouped" payment. *Id.* The trial court concluded, however, that the plaintiffs lacked standing to pursue such a claim. *Id.* at *3. The plaintiffs lacked standing because they had no financial responsibility to pay the provider for the recouped payment and the provider had no intention of collecting the balance from the plaintiffs. *Id.* Thus, the plaintiffs had no injury for which they could sue. *Id.* (citing *Lanfear v. Home Depot, Inc*., 536 F.3d 1217, 1222 (11th Cir. 2008); *Weaver v. BCBSF Life Ins. Co*., 370 F. App'x 822, 823 (9th Cir. 2010)); *see also Borg v. Phelan*, No. 16-CV-2070, 2017 WL 2226649, at *4 (M.D. Fla. May 22, 2017) (risk of being charged additional fees was too speculative to support standing); *Loftin v. KPMG LLP*, No. 02-CV-81166, 2003 WL 22225621, at *7 (S.D. Fla. Sept. 10, 2003) (speculation regarding the nature and amount of impending tax payment did not support standing).
>
> Here, Plaintiffs have not adequately alleged an injury. Were any individual Plaintiffs required to make out-of-pocket payments for treatment? Plaintiffs do not say. Is Chiron enforcing its debt against the individual Plaintiffs? Plaintiffs do not say. If the individual Plaintiffs have paid no fees out-of-pocket, and no provider intends to collect upon a debt in connection with rendered services, how can those Plaintiffs be owed anything under their respective plans? Plaintiffs do not explain. None of these issues are addressed in the Amended Complaint, and these are precisely the issues which Plaintiffs were required to explain by virtue of the Court's order of dismissal because only a full explanation of these issues will permit

4

>   the Court to plausibly infer that Chiron has instituted this action for the benefit of the individual Plaintiffs.

DE 73 at 7-8.  In both *Chiron I* and *Chiron II*, it was apparent to the Court and to Chiron that if Chiron were to seek payment from the Individual Plaintiffs, that would certainly be an injury that would give those Individual Plaintiffs the necessary standing to litigate in federal court.  But if the entity seeking payment from the Individual Plaintiffs was **Chiron**, the Court cautioned Chiron that it had serious concerns about Chiron's counsel's conflict of interest in simultaneously representing both Chiron and the Individual Plaintiffs:

>   COUNSEL: But I can tell you that it really logically would turn on the outcome of this case. If Chiron was not able, in asserting these claims, to make the recovery, then, in fact, those patients who previously had, and if you will, paid in full, no longer the case, and Chiron would, if necessary, seek recovery from them.
>
>   THE COURT: I understand that. But be careful with the road you're [h]eading down, because you're heading right down the road to a conflict of interest in that you represent Chiron and you represent the [other Plaintiffs], and you're telling me that each one of them could have claims against the other, and you're going to represent all of them?

DE 88-3 at 20:12-21:13.  The Court further cautioned Chiron of this potential conflict in its order dismissing *Chiron II* with prejudice:

>   The Court cannot discern how Chiron's counsel could collect upon Chiron's debt as to the individual Plaintiffs while simultaneously filing lawsuits in their name, given Florida conflict-of-interest rules. *See* Rule 4-1.7(a)(1) of the Rules Regulating the Florida Bar ("A lawyer must not represent a client if the representation of one client will be directly adverse to another client.").

DE 73 at 7 n.3.

After the Court's dismissal of *Chiron II* with prejudice, Chiron reinstated the instant case, *Chiron I*, by filing the operative Second Amended Complaint.  Chiron has attempted to plead an injury to the Individual Plaintiffs by now alleging that it will seek to enforce its claims as a creditor

5

against the Individual Plaintiffs, that it has so enforced its claims, that it has demanded payment from the Individual Plaintiffs, and that it has placed the Individual Plaintiffs into collection.  DE 105 at 8.  Defendant has responded by arguing in the Motion to Dismiss before the Court that Chiron now has a conflict of interest in simultaneously representing, through the same counsel, both itself and the Individual Plaintiffs.

The Court first addresses (Section A) whether Chiron has a conflict of interest in bringing the claims of the Individual Plaintiffs through the same counsel.  The Court then considers Defendant's Motion to Dismiss in the context of the claims that Chiron has brought using a power of attorney (Section B) before turning to claims that Chiron has brought via an assignment of benefits (Section C) and claims that Chiron has brought solely on its own behalf (Section D).

A. **Conflict of Interest**

Defendant argues that because Chiron has placed the other Individual Plaintiffs into collection and is actively seeking to enforce a debt against those Plaintiffs, counsel for Chiron cannot simultaneously represent both Chiron and the Individual Plaintiffs.[3]  In Response, Chiron argues that its counsel does not represent the Individual Plaintiffs at all—that there is no attorney-client relationship.  Chiron's position comes as a surprise to the Court.  Defendant points out that Chiron takes this position for the first time across two separate cases, three complaints, three motions to dismiss, and various other motion practice.  Counsel for Chiron has signed every pleading, motion, or other filing as "Attorneys for Plaintiffs" or "Counsel for Plaintiffs."  The docket in this case has reflected that the Individual Plaintiffs are parties to the case, represented by Chiron's counsel, for eighteen months.  Chiron's initial Complaint read: "Chiron Recovery Center,

---

[3] Although Defendant makes this point in its Motion to Dismiss, it does not ask to disqualify opposing counsel, nor does it cite any authority holding that dismissal of the client's claims is the proper remedy if a conflict exists.

LLC **and the above-referenced individually-named plaintiffs**, to the best of their knowledge . . . ."). DE 1 at 1 (emphasis added). In every proceeding, in every motion, and in every filing, Chiron's counsel has represented to the Court that all of the Plaintiffs in this case—including the Individual Plaintiffs—were represented. For these reasons, the Court considers whether Chiron's counsel should be estopped[4] from now arguing that the Individual Plaintiffs are not represented.

The Supreme Court has observed that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle;" nevertheless, the Court went on to enumerate several factors that inform a court's decision concerning whether to apply the doctrine in a particular case. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Courts typically consider: (1) whether the present position is "clearly inconsistent" with the earlier position; (2) whether the party succeeded in persuading a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party. *Id.* Here, all of the above-listed factors apply. As for the first factor, Chiron's present position that its counsel is not counsel for the Individual Plaintiffs is inconsistent with every pleading or paper that counsel has signed, and it is inconsistent with Chiron's prior legal positions; the Individual Plaintiffs have been listed as parties on the docket for eighteen months. As for the second factor, the Court certainly treated Chiron and its counsel as attorneys for the Individual Plaintiffs in the past and, should this position be altered, the Court would have been misled. As for the third and final factor, the Court concludes that if Chiron were permitted to change its position now it could result in

---

[4] Although Defendant does not use the word "estop," the Court construes Defendant's arguments on this point as a request for the Court to invoke the doctrine of judicial estoppel.

unfair prejudice to the Defendant in this case. The Defendant has defended itself now across multiple cases on the premise that Chiron was bringing claims on behalf of itself and the Individual Plaintiffs. Indeed, Chiron's decision to bring claims on behalf of the Individual Plaintiffs is a large part of the reason this litigation has been protracted, costly, and difficult. For these reasons, the potential application of judicial estoppel raises a close question. Nonetheless, in light of the potential ramifications that flow from a finding of a conflict of interest, the Court exercises its discretion to abstain from judicially estopping Chiron's counsel from arguing that it does not represent the Individual Plaintiffs in this action.

The Court therefore turns to the merits of Chiron's argument that its counsel does not represent the Individual Plaintiffs. Chiron argues that because it holds "a power coupled with an interest" it owes no duty and has no relationship with the party who granted it the power coupled with an interest—the Individual Plaintiffs. It is true that a power coupled with an interest does not give rise to an attorney-client relationship: "A power given as security does not create a relationship of agency as defined in § 1.01 because it is neither given for, nor exercised for, the benefit of the person who creates it. The holder is not subject to the creator's control and the holder does not owe fiduciary duties to the creator." Restatement (Third) of Agency § 3.21, comment b (2006). It is equally true that Chiron received a power from the Individual Plaintiffs—a power of attorney. But, the power must be coupled with an interest, and this is where Chiron encounters a problem.

The interest in this case is the assignment of benefits from the Individual Plaintiffs to Chiron. At the center of Chiron's claims in the Second Amended Complaint are the documents governing the insurance plans of the Individual Plaintiffs. Defendant has attached to its Motion to

8

Dismiss evidence that the insurance plans for eight of the Individual Plaintiffs contain anti-assignment provisions.[5] Although there is some variation across the plans in how the anti-assignment provisions are worded, the provisions all contain strong language:

> **No Assignment**
> Amounts payable under the plan may be used to make direct payments to providers solely in the plan administrator's discretion. You cannot assign any benefits or monies due under the plan to any person, corporation, or organization. Assignment includes transferring your right to services covered by this plan or your right to collect payment for those services or to seek any remedy against the plan, to another person or organization. No benefit under the plan shall be subject in any way to assignment, alienation, sale, transfer, pledge, attachment, garnishment, exception, or encumbrance of any kind, and any attempt to accomplish the same shall be void.

DE 109-1 at 6. Without a valid assignment, there cannot be a "power" coupled with an "interest."

In response, Chiron argues that it has pled that Defendant waived the anti-assignment provisions, citing the following paragraph in the Second Amended Complaint:

> Prior to accepting each Individual Plaintiff as a patient, Chiron sought to verify his or her benefits by calling the entity who was listed as the administrator on that patient's health identification card. While verifying benefits, Chiron would ask the United Defendant if it would accept an assignment of benefits for that patient. In each instance, to the best of Chiron's recollection, Defendants verified that they would accept the assignments. This understanding was confirmed by Chiron's employees in written, contemporaneous "verification of benefits" ("VOB") forms.

DE 105 at 10 (image omitted). Chiron has not plausibly alleged that Defendant waived the anti-assignment provisions. First, Chiron has not alleged that the person whom Chiron's employee spoke to on the phone had the authority to bind Defendant, to modify existing contracts with Defendant's insureds, or otherwise had the authority to waive bargained-for contractual provisions *over the phone*, orally, without a written instrument. Second, Chiron has not actually alleged that Defendant did, in fact, waive the anti-assignment provision. Rather, Chiron has alleged that the

---

[5] Because Defendant's documents are central to Chiron's claims and Chiron has not disputed the authenticity of the documents, the Court may consider the documents. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

person whom Chiron's employee spoke to on the phone said that Defendant "would" accept an assignment of benefits. Chiron has therefore alleged that an employee stated that at some point in the future, Defendant would take a certain action—not that the action actually took place. Juxtaposed to Chiron's allegation is the principle that a waiver is "the voluntary, intentional relinquishment of a known right" and, when a party alleges waiver, "the acts, conduct, or circumstances relied upon to show waiver must make out a clear case of intentional relinquishment." *GVB MD, LLC v. Blue Cross & Blue Shield of Fla., Inc.*, No. 19-CV-20455, 2019 WL 5889200, at *3 (S.D. Fla. Nov. 12, 2019) (quoting *Witt v. Metro Life Ins. Co.*, 772 F.3d 1269, 1279 (11th Cir. 2014) (quotations omitted)). In conclusion, Chiron has failed to plead waiver and, as a result, the Court holds that the anti-assignment provisions are enforceable.

The Court rejects the argument that no attorney-client relationship exists between counsel and the Individual Plaintiffs. Nevertheless, because the Court dismisses Count XIX (the only count brought on behalf of the Individual Plaintiffs pursuant to a power of attorney) for other reasons discussed below, the Court need not decide if, and/or to what extent, that relationship creates a conflict of interest and what (if any) remedy is required.

**B. Chiron's Count XIX, Breach of Fiduciary Duty**

Chiron has brought a single count premised on the powers of attorney in its possession. That count, Count XIX, is brought on behalf of nine of the Individual Plaintiffs. Count XIX alleges that Defendant breached its fiduciary duty to the Individual Plaintiffs through its billing practices—claim offsets. Count XIX is dismissed for a number of reasons.

First, Count XIX is dismissed because it is a shotgun pleading. The Court expressly warned Chiron about a prior shotgun pleading at docket entry 86. The Court stated: "Counsel is cautioned

that this repleading order comes with the implicit 'notion that if the plaintiff fails to comply with the court's order—by filing a repleader with the same deficiency—the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions.'" DE 86 at 15 (citing *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)).  While the vast majority of Chiron's prior shotgun pleading issues were corrected—Chiron separated its other claims into individual-specific counts, thereby permitting the Court to glean how each Individual Plaintiff is alleged to have been wronged, Count XIX, brought on behalf of nine Individual Plaintiffs, does not reference individual-specific transactions or individual-specific facts as Chiron's other counts do.  Shotgun pleading exists when multiple parties or multiple claims for relief are merged into a single count. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (2015).  Chiron does not address the individual plans governing each Individual Plaintiff's claim, nor does Count XIX clarify how a specific Defendant breached specific fiduciary duties to specific Plaintiffs.  Similarly, Chiron requests an injunction as applied to every plan and every "other" patient, regardless of whether the terms of those plans permit Defendant's billing practices.  Chiron does not explain how such an injunction would be proper.  On this basis, Count XIX is dismissed.

Count XIX is also dismissed because it is duplicative of other claims to recover benefits. Count XIX is brought pursuant to 29 U.S.C. § 1132(a)(3), but as this Court has previously ruled:

> Section 1132(a)(3) is a "'catchall' provision ... [that] act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Thus, "an ERISA plaintiff with an adequate remedy under § 1132(a)(1)(B), cannot alternatively plead and proceed under § 1132(a)(3)." *Katz v. Comprehensive Plan of Grp. Ins.*, 197 F.3d 1084, 1088 (11th Cir. 1999).

*RMP Enters. LLC v. Conn. Gen. Life Ins. Co.*, No. 9:18-CV-80171, 2018 WL 2973389, at *5 (S.D. Fla. June 13, 2018). Congress intended section 1132(a)(3) claims to be brought only when a plaintiff had no other available remedy. *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). Here, the Individual Plaintiffs have accused Defendant of the same conduct in Count XIX as they have in their other ERISA claims brought under section 1132(a)(1)(B) (Count IX through Count XVIII). If Defendant's actions in this case caused the Individual Plaintiffs damages, Plaintiffs will be made whole through their section 1132(a)(1)(B) claims. It is therefore unnecessary and duplicative for the Individual Plaintiffs to bring Count XIX when the relief sought in that count is to enjoin Defendant from the very billing practices that form the core of Counts IX through Count XVIII. On these additional grounds, Count XIX is dismissed.

Count XIX is further dismissed because Chiron is not permitted to bring that count via its power of attorney. This Court has detailed at length in prior orders that Chiron may only utilize its power of attorney when acting for the benefit of the Individual Plaintiffs. *See Chiron II*, DE 73 at 6-8. The Individual Plaintiffs will be made whole if they prevail on their ERISA claims in Counts IX through Count XVIII. The Individual Plaintiffs will, if successful on those counts, receive the full amount of their damages. In light of that, the only purpose of the injunction in Count XIX would be for Chiron to obtain monetary relief for claims that it has not brought via assignment. This is confirmed by the broad request of Chiron to enjoin the billing practice in its entirety for the treatments of "other patients under other plans." DE 105 at 49. While the Court is able to discern Chiron's interest in prohibiting Defendant's billing practices for *other* patients and *other* plans—regardless of whether those plans authorize offset billing—the Court is unable

to ascertain the interest an Individual Plaintiff would have in such an injunction.[6] Rather, it would be in an Individual Plaintiff's interest to prohibit the Defendant's billing practices in the context of the *Individual Plaintiff's insurance plan* and to be made whole, but that is accomplished in the Individual Plaintiffs' other counts. Chiron cites to *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011) for the proposition that broad, sweeping equitable relief across all of Chiron's customers should be ordered by this Court, but *CIGNA* was a **class action** filed on behalf of twenty-five thousand beneficiaries. This is not a class action. *CIGNA* was not instituted via twenty-five thousand powers of attorney. This basis further supports a dismissal of Count XIX.

Chiron will not be afforded another opportunity to replead these breach of fiduciary duty claims in this case. Chiron has had now three opportunities to plead a complaint in *Chiron I* and two opportunities to plead a complaint in *Chiron II*, which was dismissed with prejudice. Litigation in the instant case has spanned eighteen months. The complaints filed by Chiron have been extremely lengthy, measuring at one time 214 paragraphs, and the operative Second Amended Complaint totals 2,809 pages with attachments. Further amendment would unfairly prejudice the Defendant. *E.g., Andrx Pharm., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005). Nonetheless, because counsel may have had a conflict in simultaneously representing Chiron and the Individual Plaintiffs as discussed above, Count XIX is dismissed without prejudice, but without leave to amend the pleadings in this case (including the failure to plead waiver).

### C. Chiron's Assignment-Based Counts, Counts IX though XVIII

---

[6] Although an Individual Plaintiff may want to argue that he or she desires an injunction to forestall problems with future claims with some other out-of-network provider like Chiron, (i) this is not pled, (ii) the Court is unaware of how any such ruling could be made, prospectively, without knowing the terms of future plans, and (iii) as to the same plan, with the same Individual Plaintiff, res judicata and/or issue preclusion may prohibit Defendant from using offset billing in the future as a result of the Individual Plaintiff prevailing on his or her section 1132(a)(1)(B) claims.

Chiron has brought ten counts by virtue of assignments of benefits from the Individual Plaintiffs, each under 29 U.S.C. § 1132(a)(1)(B) and each contending that Defendant wrongfully refused to pay health insurance benefits. The Court has already ruled that eight of the Individual Plaintiffs, A.N., C.W., E.R., Ke W., S.M., S.P., S.R., and W.G., could not assign their right to obtain benefits. As a result, the counts brought by virtue of those assignments, Counts IX, XI, XII, XIV, XV, XVI, XVII, and XVIII are dismissed. Because the Court's dismissal is based upon the invalidity of the Individual Plaintiffs' assignments and not on the merits of the underlying claims, the Court's dismissal is without prejudice but without leave to amend for the same reasons previously stated. The two counts premised on assignments from Individual Plaintiffs who did not have anti-assignment provisions, Count X and Count XIII, survive.

**D. Chiron's Individual Counts, Counts I through VIII.**

Chiron has brought eight claims under Florida law on its own behalf. The claims include Breach of Implied-in-Fact Contract (Count I and Count II), Promissory Estoppel (Count III and Count IV), Common-Law Fraud (Count V and Count VI), and Negligent Misrepresentation (Count VII and Count VIII). Each claim is considered in turn.

Breach of Implied Contract

The Second Amended Complaint generally alleges that because Defendant paid Chiron for certain health benefit claims in the past or because it followed a typical verification of benefits process, somehow a contract was created. The Court has addressed identical claims by medical providers in the past, and has ruled as follows:

> Under Florida law, a valid contract arises when the parties' assent is manifested through written or spoken words, or "inferred in whole or in part from the parties' conduct." *Commerce P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 385 (Fla. App. 4 Dist. 1997). "A contract based on the parties' words is characterized as

express, whereas, a contract based on the parties' conduct is said to be implied in fact." *Baron v. Osman*, 39 So. 3d 449, 451 (Fla. App. 5 Dist. 2010).

Here, Plaintiffs' implied-in-fact contract claim is based on alleged pre-service communications during which Cigna allegedly verified eligibility and coverage for the services Plaintiffs provided. (FAC ¶¶ 205-208.) Plaintiffs allege that through certain unidentified "words and conduct," Cigna agreed to pay Plaintiffs' "usual and customary charges" for the services rendered. (Id. ¶ 208.) The FAC also alleges that Cigna breached this alleged "promise" by "failing to reimburse Plaintiffs based on their usual and customary charges" or "failing to reimburse Plaintiffs at all." (Id. ¶ 218.) These allegations are insufficient for multiple reasons.

. . .

But even if Plaintiffs had included this information, Plaintiffs fail to allege any "conduct" that might give rise to an implied contract. Plaintiffs' claim rests on Cigna's alleged oral "verifications" of coverage. Plaintiffs refer generally to Cigna's "conduct during the verification process," but never specify what actions Cigna allegedly took which might support a contract claim. (FAC ¶ 206.) Without any alleged conduct, there can be no implied-in-fact contract. *See Baron*, 39 So. 3d at 451.

Furthermore, Cigna's alleged oral verification of coverage is insufficient to form the basis of any agreement to pay—whether implied or express. Courts across the country agree that an insurer's verification of coverage is not a promise to pay a certain amount. *See Vencor Hosps. S., Inc. v. Blue Cross & Blue Shield of R.I.*, 86 F. Supp. 2d 1155, 1165 (S.D. Fla. 2000) (noting that insurer's verification of coverage is merely a representation that the insured was "covered for the type of treatment" proposed by the medical provider, not promise to pay a certain amount for services), *aff'd*, 284 F.3d 1174 (11th Cir. 2002); *Peacock Med. Lab, LLC v. UnitedHealth Group, Inc.*, No. 14-81271-CV, 2015 WL 5118122, at *5 (S.D. Fla. Sept. 1, 2015) ("[A]llegations here of an indefinite 'confirmation of coverage' are insufficient to allege the 'definite' promise ..."); *Cedars Sinai Medical Center v. Mid–West Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000) ("[W]ithin the medical insurance industry, an insurer's verification is not the same as a promise to pay"); *Tenet Healthsystem Desert, Inc. v. Fortis Ins. Co., Inc.*, 520 F. Supp. 2d 1184, 1194 (C.D. Cal. 2007) (coverage verification "cannot be construed as a binding contractual agreement"); *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, No. 4:11 C 1355, 2016 WL 7157522, at *4 (S.D. Tex. Dec. 7, 2016) ("[E]ven assuming that it was [the provider's] practice to make verification calls, the calls were actually made, and the insurance was verified, that verification was not the same as a promise of payment."). Plaintiffs' attempt to construe Cigna's alleged oral verification as a contractual agreement to pay Plaintiffs' "usual and customary charges" has been conclusively rejected by courts nationwide. For these reasons, Count III is dismissed with prejudice.

15

*RMP*, 2018 WL 6110998, at *8. The Court's reasoning and analysis in *RMP* fully applies in this case. Chiron has alleged that routine course of dealing and routine coverage verification formed a contract, but this is a proposition solidly rejected by courts throughout the country, and this Court has rejected such a contention in the past. *Id.* Counts I and II are dismissed with prejudice.[7]

### Promissory Estoppel

In the alternative to its breach of implied contract claim, Chiron has brought a claim for promissory estoppel. Under Florida law, the elements of promissory estoppel are: "(1) a representation as to a material fact that is contrary to a later-asserted position; (2) a reasonable reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon." *FCCI Ins. Co. v. Cayce's Excavation, Inc.*, 901 So. 2d 248, 251 (Fla. Dist. Ct. App. 2005). "The promise must be definite and the reliance upon it reasonable." *Peacock*, 2015 WL 5118122 at *5. Here, Defendant argues that Chiron has failed to articulate the "definite" promise that Defendant made that was later broken. For all of the reasons set forth above, the "promise" cannot be Defendant's routine verification of insurance coverage. In its Response, Chiron articulates the promise that was broken as follows:

> Here, United authorized Chiron to treat new patients, and Chiron did so, relying on specific treatment authorizations and United's payment history. SAC ¶¶ 51-57, 91, 96. After United induced Chiron to take in new patients, it asserted "offsets" by rescinding its prior statements approving specific "allowed amounts" for other patients' treatments. Id. ¶¶ 92-93, 97-98. Chiron seeks to estop United's abandonment of those past statements.

---

[7] In contrast to the claims Chiron asserts as power of attorney or assignee asserting the Individual Plaintiffs' rights, Chiron asserts its own rights in these state law claims. The conflict of interest concerns (and the potential for prejudice to the represented individuals from a conclusive dismissal) discussed above are not present. Therefore, Chiron's state law claims are dismissed with prejudice

16

DE 113 at 19. Although the Court is still somewhat unclear on what Defendant's alleged promise was, it does seem that Chiron relies solely upon Defendant's verification of insurance coverage at the time a new patient was accepted by Chiron. The Court has already set forth at length that a routine verification of coverage is not a promise to pay. *E.g., Cedars Sinai Medical Center*, 118 F. Supp. 2d at 1008 ("[W]ithin the medical insurance industry, an insurer's verification is not the same as a promise to pay"). Because Chiron has failed to allege any specific, definite promise by Defendant and because Chiron relies upon insurance verification procedures, Chiron's Count III and Count IV are dismissed with prejudice.

Fraud and Negligent Misrepresentation

Chiron has also brought fraud and negligent misrepresentation claims as Counts V through VIII. To state a claim for common law fraud, Chiron must allege "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1317-18 (S.D. Fla. 2017) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)). Similarly, as to negligent misrepresentation, Chiron must allege "(1) a misrepresentation of material fact; (2) that the representor either knew or should have known was false or made without knowledge of truth or falsity; (3) the representor intended to induce another to act on the misrepresentation; and (4) resulting injury to a party acting in justifiable reliance on the misrepresentation." *MeterLogic, Inc. v. Copier Solutions, Inc.*, 126 F. Supp. 2d 1346, 1363 (S.D. Fla. 2000). These claims implicate Rule 9(b), under which Chiron must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person

17

responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). To state a claim for negligent misrepresentation that complies with Rule 9(b), Chiron must "assert the date," the "method of communication," the "specific content" of the communication and, when possible, "specific quotations." *Peacock*, 2015 WL 5118122 at *5.

> Chiron summarizes the basis for its claims as follows:
>
> Both counts are based on the same misrepresentations by United. Before Chiron admitted the patients, it called United to verify their coverage for Chiron's treatments. SAC ¶¶ 51-57. By telling Chiron that the treatments were covered, United's agents impliedly represented that United would pay for them, consistent with its past payments for the same procedures. Id. United's statements were misleading because, as an organization, United knew it would be arbitrarily and comprehensively denying payment to Chiron.

DE 113 at 20. Chiron's allegations fall well short of Rule 9(b) requirements. Chiron has alleged no specific misrepresentations or specific false statements, instead alleging generally that Defendant made false statements in authorizing treatment, requesting medical records, conducting an administrative review that determined certain claims were improper, and failing to pay Chiron's claims. DE 105 at 28-36. Nowhere does Chiron allege that United specifically represented that it would *pay* Chiron when it verified coverage or authorized service, or that United ever promised to *pay* Chiron's rates. *See id.* at *4-5 (dismissing a negligent misrepresentation claim because the complaint merely made general allegations pertaining to communications about the scope and coverage of insured's plans). Indeed, Chiron attempts to state a fraud and misrepresentation claim by relying on allegations regarding the verification process; however, as described above, it is

18

well-established that verification processes are not promises or representations regarding payment. Counts V through VIII are dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [DE 109] is **GRANTED IN PART AND DENIED IN PART**. Counts I though VIII are **DISMISSED WITH PREJUDICE**. Count X and Count XIII **SURVIVE**. All other counts are **DISMISSED** without prejudice and without leave to amend. The Court will set trial by separate order.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 30th day of June, 2020.

*/s/ Robin L. Rosenberg*
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record